UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TROY RAY EMANUEL, <br><br> Petitioner, <br> v. <br><br> DWIGHT NEVEN, et al., <br><br> Respondents. | Case No. 2:16-cv-01368-GMN-GWF <br><br> **ORDER** |

This is a habeas corpus proceeding commenced under 28 U.S.C. § 2254 by Petitioner Troy Ray Emanuel, a Nevada prisoner who is represented by counsel. Currently before the Court is Respondents' Motion to Dismiss (ECF No. 37). Emanuel has opposed (ECF No. 46),[1] and Respondents have replied (ECF No. 48). Also before the Court is Emanuel's Motion for Evidentiary Hearing (ECF No. 47). Respondents have opposed (ECF No. 49), and Emanuel has replied (ECF No. 50). For the reasons discussed below, Respondents' motion is granted, and Emanuel's motion is denied.

## **BACKGROUND**

### I. PROCEDURAL HISTORY

Emanuel challenges a 2013 conviction and sentence, pursuant to a plea agreement, imposed by the Eighth Judicial District Court for Clark County, Nevada ("state court") for 11 criminal charges stemming from a fight on the Las Vegas strip and a resulting shooting at a nearby Siegel Suites. (ECF No. 9-2.)

---

[1] The Court notes that Emanuel's response (ECF No. 46) is 33 pages long, excluding the tables of contents and authorities. The Local Rules of Civil Practice expressly limit such responses to 24 pages, and motions to exceed pages limits are disfavored. LR 7-3(b), (c). Emanuel's counsel did not seek leave of the Court to file an extended response. The Local Rules were drafted with knowledge that many—if not most—federal habeas cases involve complex legal questions. Longer page limits merely invite repetitive arguments, verbosity, string citation, unwarranted footnotes, and excessive block quotation, which waste judicial resources. Counsel is thus cautioned against violating the Local Rules by exceeding the standard page limits without leave of the Court.

1

### A. Pre-Trial Proceedings

Attorney Richard Tannery appeared on behalf of Emanuel at his preliminary hearing. (ECF No. 9-7.) Tannery and Emanuel's relationship revealed signs of strain early in the case. Emanuel filed his first *pro se* motion to dismiss Tannery in November 2012, alleging that Tannery did not communicate or visit with him and was not investigating his case. (ECF No. 11-1.) Emanuel and Tannery discussed the motion and Tannery told the state court the motion was no longer necessary. (ECF No. 9-10.) However, the communication problems continued, prompting Emanuel to file a second *pro se* motion to dismiss Tannery in April 2013. (ECF No. 9-18.)

In early May 2013, Emanuel was presented with an offer to plead guilty to two felony counts and stipulate to a total of 8–20 years in prison. (ECF No. 9-19 at 3.) Emanuel rejected the offer at calendar call on May 15, 2013. (*Id.*) The prosecutor made a record of the range of potential punishment and the rejected offer, stated that no further offers would be extended, and also noted that both Tannery and co-counsel, Spencer Judd,[2] recommended to Emanuel that he take the offer. (*Id.* at 3–4.) Upon further questioning by the state court, Emanuel confirmed his belief that it was in his best interest to go to trial. (*Id.* at 4–5.)

At the end of calendar call, the state court summarily denied Emanuel's second *pro se* motion to dismiss Tannery. (*Id.* at 5 ("We're going to trial. You've got two good lawyers and [Emanuel's] pro per motion is denied.").) Emanuel asked to be heard on the matter, but the judge threatened to place duct tape over his mouth if did not stop talking. (*Id.* at 6.)

### B. Guilty Plea Agreement

On the first day of trial, May 20, 2013, the parties filed a plea agreement by which Emanuel pleaded to 11 of 12 counts. He entered a guilty plea to one count of conspiracy to commit murder, four counts of battery with use of a deadly weapon resulting in substantial bodily harm, and one count of robbery with use of a deadly weapon resulting in substantial bodily harm. (ECF No. 10-3.) He also entered an *Alford*[3] plea to five counts of attempted murder with use of a deadly weapon.

---

[2] Judd testified that Tannery requested Judd's assistance on to Emanuel's case a few weeks prior to calendar call. (ECF No. 11-4 at 6–7.)

[3] *North Carolina v. Alford*, 400 U.S. 25 (1970).

(*Id.*) Under the plea agreement, the prosecution dismissed a single count of discharging a firearm into a structure and retained the right to argue at sentencing. (*Id.*) The state court canvased Emanuel, accepted his plea, and noted, "I may try to sentence him as close as I can to what [his co-defendants] get. But, I'll look at the PSI." (*Id.* at 18.)

### C. *Pro se* Motion to Withdraw Guilty Plea

One month after the plea, but prior to sentencing, Emanuel filed a *pro se* motion to withdraw the guilty plea, alleging that Tannery was ineffective and Emanuel did not understand the plea agreement. (ECF No. 52-8.) The *pro se* motion was considered a "left side filing" since Emanuel was represented by counsel; thus, the clerk's office forwarded the document to Tannery without filing it on the official record.[4] At a July 2013 hearing,[5] Tannery informed the state court of Emanuel's *pro se* motion, noting that Emanuel felt "he was coerced by me into entering the guilty plea." (ECF No. 10-5 at 3.) The state court allowed Tannery to withdraw as counsel of record, appointed attorney Roy Nelson to take Tannery's place, and continued sentencing for 30 days to allow Nelson to review the plea transcript and determine whether Emanuel had grounds to withdraw his guilty plea. (*Id.*)

The state court held a status check on September 16, 2013. (ECF No. 10-6.) Nelson told the state court that he had reviewed the guilty plea agreement and Emanuel's *pro se* motion:

> It appears that he's attempting to withdraw his plea more on a situation of ineffective assistance of counsel versus some type of coercion by Mr. Tannery.
>
> I've explained to him that I think the more appropriate avenue for him to take is through postconviction. That being said, he wants me to ask you for a hearing so that we can essentially cross examine Mr. Tannery as to what he may have promised [Emanuel] regarding his sentencing.

(*Id.* at 3.) The state court asked Emanuel if he understood he would be waiving his attorney-client

---

[4] The Clerk of the Court forwarded many of Emanuel's *pro se* filings to his counsel, citing Rule 3.70 of the Rules of Practice for the Eighth Judicial District Court:

> **Rule 3.70. Papers which may not be filed.** Except as may be required by the provisions of NRS 34.730 to 34.830, inclusive, all motions, petitions, pleadings or other papers delivered to the clerk of the court by a defendant who has counsel of record will not be filed but must be marked with the date received and a copy forwarded to that attorney for such consideration as counsel deems appropriate. …

[5] Days before the sentencing hearing, the prosecution filed a sentencing memorandum requesting a total prison sentence of 14–35 years. (ECF No. 10-4 at 9.) The prosecution noted that Emanuel was facing a maximum of 120–300 years on the 11 counts and deadly weapon enhancements. (*Id.* at 8.)

privilege, and Emanuel agreed; thus, an evidentiary hearing was set two weeks later. (*Id.*)

Nelson appeared with Emanuel at a status check on September 30, 2013. (ECF No. 52-35.) Nelson advised the state court that Emanuel "was withdrawing -- his intent to either conduct an evidentiary hearing or to try to withdraw his plea" and his mother was in the process of gathering letters in preparation for his sentencing. (*Id.* at 3.) As a result, a sentencing date was set.

### D.     Sentencing

Emanuel was sentenced in October 2013. (ECF Nos. 10-7, 10-8.) The prosecution requested a total sentence of 14–35 years. (ECF No. 10-7 at 3–8.) Nelson told the state court:

> Judge, I'm sure you're aware I did not represent [Emanuel] at the time that he entered his plea. That was Mr. Tannery. I was only appointed afterwards to make a determination whether or note he had any grounds to withdraw his plea.
>
> Prior to us making that decision, I provided him with a copy of the State's sentencing memorandum. He got a chance to see what they were going to ask for and he still followed through and went through with his plea.

(*Id.* at 8.) The state court sentenced Emanuel to a total of 14–35 years, and entered a judgment of conviction on November 1, 2013. (ECF No. 10-10.) No direct appeal was filed.

### E.     Post-Conviction Proceedings

One week after sentencing, Emanuel attempted to file a *pro se* motion to vacate judgment and grant a new trial based on ineffective assistance of counsel ("IAC") and improper inducement to plead guilty by the state court judge. (ECF No. 52-9.) Emanuel's motion alleged that Tannery lied about the guilty plea agreement and potential sentence, and Nelson promised the judge would sentence him to the same sentence as his co-defendants. Had it not been for Tannery and Nelson's bad advice and the judge's statements, Emanuel claimed he would not have pleaded guilty. The court clerk did not file this motion but sent it to Nelson instead as a left side filing.

On February 13, 2014, Emanuel filed a *pro se* state petition for writ of habeas corpus ("*pro se* state petition*") seeking post-conviction relief. (ECF No. 10-11.) He raised multiple IAC claims against Tannery and Nelson. Emanuel alleged that Tannery failed to explain the 8–20-year offer to Emanuel, Tannery told Emanuel to reject the 8–20-year offer because Tannery thought he could get a better deal, Tannery tricked Emanuel into pleading guilty to 11 charges by saying his sentence would be the same as his co-defendants and failing to explain the full consequences, and Tannery

failed to contact Emanuel's mother to obtain mitigation evidence. Emanuel alleged that Nelson failed to follow through with Emanuel's motion to withdraw guilty plea, and Nelson failed to file a direct appeal despite Emanuel's request that he do so.

Emanuel requested the appointment of counsel to litigate his *pro se* state petition. (ECF No. 10-13.) Despite Emanuel's IAC claims against Nelson, the state court reappointed Nelson to represent Emanuel in the post-conviction proceeding and directed Nelson to file any supplemental briefing as soon as possible. (ECF Nos. 10-18.)

In June 2014, the prosecution responded to Emanuel's *pro se* state petition. (ECF No. 10-19.) Months later, Nelson filed a Supplemental Petition for Writ of Habeas Corpus ("supplemental petition") (ECF No. 10-20). The supplemental petition brought an IAC claim against Tannery alleging that he failed to accurately convey to Emanuel the terms of the guilty plea agreement and caused Emanuel to involuntarily and unintelligently enter into that agreement. The prosecution filed a separate response to the supplemental petition. (ECF No. 11-3.)

From August to November 2014, Emanuel sent numerous *pro se* documents to the state court for filing.[6] Each of these documents repeated IAC allegations against Tannery and Nelson. Emanuel also alleged a conflict of interest between himself and Nelson. (ECF No. 52-21 at 4 ("There is an actual conflict between the Defendant's interest and Mr. Nelson's interest."); ECF No. 52-24 at 10 ("It is my belief that I will be prejudiced by Mr. Nelson['s] representation because he will have to argue ineffectiveness.").) The court clerk did not file these documents but sent them to Nelson as left side filings.

The state court held an evidentiary hearing on January 12, 2015. (ECF No. 9-10 at 31–35.) Nelson expressed concern about the hearing going forward because Tannery was not present:

> Mr. Tannery's not here. I believe he's in Oklahoma. And so, part of my client's contention is that Mr. Tannery was ineffective for failing to -- to see him.
>
> At the time of the calendar call when the offers finally rejected he expressed to your Honor some distrust of the attorneys that were representing him. So I would think

---

[6] Aug. 13, 2014 Supplemental to Defendant's Pro Per Petition for Writ of Habeas Corpus (ECF No. 52-18); Aug. 28, 2014 Memorandum to the Court (ECF No. 52-20); Sept. 2, 2014 Notice to the Court (ECF No. 52-21); Nov. 3, 2014 Memorandum to the Court (ECF No. 52-24); Nov. 7, 2014 Memorandum to the Court (ECF No. 52-26).

it's appropriate to have Mr. Tannery here, but I'll submit it to you Honor.

(ECF No. 11-4 at 3.) The prosecutor asserted that Tannery and Judd—who was present for the evidentiary hearing—were both intricately involved in the plea negotiations and discussed the plea agreement with Emanuel; thus, the evidentiary hearing should go forward with Judd. (*Id.* at 3–5.) The state court agreed. (*Id.* at 5.) After testimony by Judd and Emanuel, the state court found that any further hearing would be irrelevant and denied relief. (*Id.* at 31–32 (ordering prosecutors to prepare written findings of facts and conclusions of law).) The written order addressed the grounds raised in both the *pro se* state petition and supplemental petition. (ECF No. 11-9.)

### F. State Habeas Appeal

Emanuel filed a *pro se* notice of appeal of the denial of post-conviction relief ("state habeas appeal"). (ECF No. 11-5.) Nelson was still counsel of record but he failed to file an appellate brief. (ECF No. 11-16.) The Nevada Supreme Court imposed conditional monetary sanctions, extended the deadline, and warned Nelson that he would be referred to the State Bar of Nevada for investigation if he failed to abide by the new deadline. (*Id.*) Nelson did not file an appellate brief or request an extension of time; thus, the Nevada Supreme Court removed him from the state habeas appeal and instructed the state court to appoint a new lawyer. (ECF No. 11-17.) Attorney Matthew Lay was appointed as Emanuel's appellate counsel. (ECF No. 11-18.)

While investigating Emanuel's case, Lay became aware that Tannery was present in the courthouse on the day of Emanuel's evidentiary hearing testifying in a different case, which contradicted Nelson's representation that Tannery was unavailable. (ECF No. 12-1.) Lay moved to expand the record to obtain copies of records in the other case (ECF No. 12-9); but the Nevada Supreme Court denied the motion.[7] (ECF No. 12-11.)

Emanuel's appellate brief raised two issues: (1) Nelson actively represented conflicting

---

[7] Although the motion to expand the record was denied, Emanuel's appellate brief alleged that Tannery was present in the courthouse on January 12, 2015, the date of the evidentiary hearing, to testify in an unrelated matter. (ECF No. 12-12 at 24.) Pointing to the video recordings from the Jefferson Audio Video System ("JAVS") in *State v. Johnson*, Case No. 10-C-263560, Emanuel argued the video showed Tannery was available to appear as a witness. (*Id.*) The state moved to strike Emanuel's reference to non-record materials. (ECF No. 12-13.) The Nevada Supreme Court denied the motion and declined to strike the reference finding that it was a de minimis allegation. (ECF No. 12-16.)

interests that adversely affected his performance, in violation of Emanuel's Sixth Amendment right to conflict-free counsel; and (2) the state court erred by dismissing Emanuel's post-conviction petition without conducting a meaningful evidentiary hearing, in violation of Emanuel's due process rights under the Fourteenth Amendment. (ECF No. 12-12.)

The Nevada Court of Appeals affirmed the denial of post-conviction relief. (ECF No. 12-21.) The appellate court declined to consider Emanuel's first ground alleging that Nelson operated under a conflict of interest because it was not raised in the state court in the first instance, and further held that Emanuel failed to show cause and prejudice for his failure to raise the claim. Applying the abuse-of-discretion standard for denial of a continuance, the appellate court denied Emanuel's second ground. "On appeal, Emanuel merely speculates his other counsel could have provided additional information, and accordingly, fails to meet his burden to demonstrate he was prejudiced by the denial of the continuance request." (*Id.* at 3.)

### G. Federal Habeas Proceedings

Emanuel initiated this federal habeas proceeding *pro se* on June 16, 2016. (ECF No. 1.) The Court later appointed counsel to represent Emanuel and granted him leave to amend. (ECF No. 20.) He filed a counseled First Amended Petition for Writ of Habeas Corpus (ECF No. 29) ("amended petition") on February 4, 2019, alleging four claims for relief with multiple sub-claims:

Claim 1: Emanuel was denied the effective assistance of trial counsel (Richard Tannery) as guaranteed by the Sixth and Fourteenth Amendments.

Claim 2: Emanuel was denied the effective assistance of trial counsel (Roy Nelson) as guaranteed by the Sixth and Fourteenth Amendments.
    2.1 Nelson convinced Emanuel to abandon a pre-sentencing motion to withdraw guilty plea and to instead pursue the issue in a post-conviction proceeding.
    2.2 Nelson failed to perfect Emanuel's direct appeal despite being requested to file an appeal.
    2.3 Nelson did not effectively represent Emanuel in the state post-conviction proceedings because of a conflict of interest.

Claim 3: Emanuel was denied the effective assistance of counsel and due process when the state court failed to conduct a meaningful evidentiary hearing with Tannery present as guaranteed by the Sixth

and Fourteenth Amendments.

        3.1    Emanuel was denied his due process right to be heard at a meaningful time and in a meaningful manner when the state court insisted that Tannery—the subject of his ineffective assistance claim—was not necessary for the hearing.

        3.2    Emanuel was denied due process and the effective assistance of counsel when Nelson lied to the state court about Tannery's availability.

Claim 4:    Emanuel was denied fundamental fairness in the state post-conviction proceedings in a manner that directly impinged upon his ability to present claims of ineffective assistance of counsel in violation of his right to due process, as guaranteed by the Sixth and Fourteenth Amendments.

## **DISCUSSION**

Respondents now move to dismiss Grounds 2.3, 3 (including both subclaims: 3.1 and 3.2), and 4 as non-cognizable in federal habeas, and Grounds 1, 2 (including all subclaims: 2.1, 2.2, 2.3), 3.2, and 4 as unexhausted.

**I.   COGNIZABILITY**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") "places limitations on a federal court's power to grant a state prisoner's federal habeas petition." *Hurles v. Ryan*, 752 F.3d 768, 777 (9th Cir. 2014) (citing *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). When conducting habeas review, a federal court is limited to deciding whether a conviction violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Unless an issue of federal constitutional or statutory law is implicated by the facts presented, the claim is not cognizable in federal habeas. *McGuire*, 502 U.S. 68.

    **A.    Due Process Claims: Grounds 3.1, 3.2, and 4**

The Ninth Circuit has long held that "a petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings." *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989). A petitioner may not transform a state-law issue into a federal one by asserting a violation of due process. *Langford v. Day*, 110 F.3d 1380, 1381 (9th Cir. 1996).

Respondents argue that the due process claims alleged in Grounds 3.1, 3.2, and 4 are not cognizable in federal habeas because they raise independent challenges to Emanuel's state post-

conviction proceedings. (ECF No. 37 at 6.) Emanuel counters that his claims are cognizable because his due process right of access to the courts require not only the ability to timely file a petition but a meaningful process. (ECF No. 46 at 36–38.)

Emanuel's claims are foreclosed by Ninth Circuit precedent. *E.g.*, *Cooper v. Neven*, 641 F.3d 322, 331 (9th Cir. 2011) (affirming dismissal of non-cognizable grounds). In *Cooper*, the Ninth Circuit reaffirmed that claims stemming "from activities arising out of the state trial court's consideration of his last state habeas petition" are not cognizable for federal habeas review. *Id.* (citing *Franzen*, 877 F.2d at 26). Here, Grounds 3.1, 3.2, and 4 plainly bring a due process challenge to the state court's consideration of the post-conviction proceedings. The Court must dismiss such claims as non-cognizable.

### B. IAC Claims Against Nelson as Post-Conviction Counsel: 2.3 and 3.2

The Sixth Amendment right to counsel includes "the right to the effective assistance of counsel." *Garza v. Idaho*, --- U.S. ----, 139 S. Ct. 738, 743–44 (2019) (quotation omitted). However, AEDPA specifies that the "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a [§ 2254] proceeding." 28 U.S.C. § 2254(i).

Respondents argue that the IAC claims alleged in Grounds 2.3 and 3.2 are not cognizable because they rely on the ineffectiveness of Nelson as post-conviction counsel as an independent ground for relief. (ECF No. 37 at 5.)

Emanuel responds that the Supreme Court has left open the question of "whether a prisoner has a right to effective counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." (ECF No. 46 at 36 (quoting *Martinez v. Ryan*, 566 U.S. 1, 9 (2012); *Coleman v. Thompson*, 501 U.S. 722, 755 (1991).) Because Nevada prisoners are required to bring IAC claims in post-conviction proceedings, Emanuel argues that he had a right to effective and conflict-free counsel in the state post-conviction proceedings.

Respondents reply that *Martinez* does not apply here because the case provides only a limited equitable exception that allows federal courts to review IAC claims against trial counsel when post-conviction counsel has also been ineffective. (ECF No. 48 at 8.) They assert that

*Martinez* does not create a constitutional right to post-conviction counsel, nor extend to claims other than those alleging IAC claims against trial counsel. Because Grounds 2.3 and 3.2 allege standalone claims of Nelson's ineffectiveness during the post-conviction proceedings—not IAC claims against Nelson as trial counsel—Respondents maintain that *Martinez* is inapplicable.

Although *Coleman* and *Martinez* left open a constitutional question regarding a petitioner's right to effective counsel in post-conviction proceedings, an open question does not establish a cognizable habeas claim. In its current state, Supreme Court precedent "establish[es] that the right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). To the extent Emanuel seeks habeas relief regarding Nelson's conduct as post-conviction counsel, the plain language of § 2254(i) precludes relief. Therefore, the Court dismisses Grounds 2.3 and 3.2 as non-cognizable.

## II. EXHAUSTION & PROCEDURAL DEFAULT

Because Grounds 2.3, 3.1, 3.2, and 4 are not cognizable, and are thus dismissed, the analysis of exhaustion and procedural default focuses on Emanuel's remaining IAC claims against Tannery as trial counsel and Nelson as post-plea and sentencing counsel: Grounds 1, 2.1, and 2.2.

### A. Legal Standard

Pursuant to 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court remedies on a claim before presenting that claim to the federal courts. This exhaustion requirement ensures that the state courts, as a matter of comity, will have the first opportunity to address and correct alleged violations of federal constitutional guarantees. *E.g.*, *Coleman*, 501 U.S. at 731. "A petitioner has exhausted his federal claims when he has fully and fairly presented them to the state courts." *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999)). To satisfy the exhaustion requirement, a claim must have been raised through one complete round of either direct appeal or collateral proceedings to the highest state court level of review available. *O'Sullivan*, 526 U.S. at 844–45. A properly exhausted claim " 'must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief'." *Woods*, 764 F.3d at 1129 (quoting *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996)). Fair presentation therefore requires a petitioner to

present the state courts with both the operative facts and the federal legal theory upon which the claim is based. *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005).

Procedural default "is an important 'corollary' to the exhaustion requirement." *Davila v. Davis*, --- U.S. ----, 137 S. Ct. 2058, 2064 (2017) (citation omitted). Federal habeas review is generally unavailable to a state prisoner where the state courts denied his claim pursuant to an independent and adequate state procedural rule. *Coleman*, 501 U.S. at 750. In such situations, the prisoner has "procedurally defaulted" the claim and federal habeas review is barred unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Id.* " 'Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address' the merits of 'those claims in the first instance'." *Davila*, 137 S. Ct. at 2064 (quoting *Coleman*, 501 U.S., at 731–32). "The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine." *Id.* (citing *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)).

### B. The Parties' Positions

Respondents argue that the remaining grounds for relief, Grounds 1, 2.1, and 2.2, are unexhausted because Emanuel failed to fairly present these IAC claims to the Nevada appellate courts. (ECF No. 37 at 3.)

Emanuel opposes Respondents' exhaustion argument under three theories. (ECF No. 46.) First, he argues his numerous attempts to raise these IAC claims before the state court and appellate court exhausted his claims. (*Id.* at 7–19.) He repeatedly informed—or attempted to inform—the state court about the basis for these IAC claims through letters and other documents, but the clerk refused to file them. Emanuel contends that his IAC claims are exhausted because his submissions fairly presented the factual and legal issues and the state court could have addressed his claims.

Second, even if the Court finds that Emanuel's claims are unexhausted, it may nonetheless resolve his claims on the merits because the fundamentally unfair post-conviction proceedings excuses the exhaustion requirement. (*Id.* at 19–21.) Emanuel argues that he effectively had no means to fully exhaust any of his IAC claims because the supplemental petition Nelson filed

"dropped all the claims mentioning his own ineffectiveness, and pursued only the claims about Tannery." (*Id.* at 20.) Emanuel asserts, because his attempts to alert the state court to Nelson's conflict were ignored, he was left with no viable mechanism to ensure that he received a full and fair adjudication of his IAC claims.

Third, Emanuel contends that his IAC claims are technically exhausted and he can demonstrate cause and prejudice to overcome the procedural default under *Martinez* because Nelson was ineffective. (*Id.* at 21–34.) Emanuel argues that Nelson's actual conflict of interest during the post-conviction proceedings gave Nelson a strong disincentive to prove his own ineffectiveness. Emanuel points out that Nelson never brought the conflict to the state court's attention. Even if there was no conflict, Emanuel argues that Nelson's failure to properly litigate the evidentiary hearing shows his ineffectiveness and supports a finding of cause and prejudice.

Respondents reply that Emanuel's efforts did not result in the actual or technical exhaustion of his claims because his attempts did not qualify as fair presentation to all appropriate Nevada courts. (ECF No. 48 at 3–6.) They assert that Emanuel's rejected court filings did not exhaust his claims because the state court was not obligated to consider such filings. Respondents further argue that *Martinez* does not excuse Emanuel's procedural default. (*Id.* at 6–9.) They contend that Emanuel has not shown that Nelson's alleged conflict precluded Emanuel from raising IAC claims against Nelson or Tannery in the post-conviction proceedings. In particular, Respondents point out that no conflict prevented appellate counsel Lay from investigating the alleged ineffective performance in Emanuel's criminal case, yet Lay did not raise such IAC claims against Tannery and Nelson on state habeas appeal.

In conjunction with his opposition, Emanuel filed a motion for evidentiary hearing to demonstrate Nelson's ineffectiveness. (ECF No. 47.) Respondents oppose the motion, arguing that no evidentiary hearing is necessary to resolve the motion to dismiss. (ECF No. 49.) Emanuel replies that the state court record is not sufficient and an evidentiary hearing is necessary to resolve multiple questions. (ECF No. 50.)

///

///

**C. Analysis**

        1. <u>Emanuel's *Pro Se* Submissions did not Exhaust his IAC Claims</u>

Before seeking federal habeas relief, a state prisoner must exhaust available state remedies, "thereby giving the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights'." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim *in each appropriate state court* (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (citing *Duncan*, 513 U.S. at 365–66); *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (noting that "a petitioner must properly raise it *on every level of direct review*" (emphasis added)).

Grounds 1, 2.1, and 2.2, are unexhausted because Emanuel did not present these IAC claims through one full round of collateral proceedings before the Nevada courts. Although the state record shows that most of Emanuel's *pro se* submissions were not filed or considered by the state court, his *pro se* state petition was both filed and considered. The state opposed the *pro se* state petition (ECF No. 10-19), and later separately opposed the supplemental petition filed by Nelson (ECF No. 11-3). The state court's findings of facts and conclusions of law decided each of the grounds Emanuel raised in the *pro se* state petition as well as the supplemental petition. (ECF No. 11-9.[8]) Thus, contrary to Emanuel's assertion, the supplemental petition did not drop IAC claims against Nelson. The *pro se* state petition was sufficient to raise Emanuel's IAC claims before the state court but it was not enough to fully exhaust. AEDPA requires Emanuel to take his IAC claims all the way through an appeal before Nevada's appellate courts, but he did not do so. Emanuel cannot blame Nelson for the exclusion of his trial, post-plea, and sentencing IAC claims from his state habeas appeal since that was handled by appellate counsel Lay. The IAC claims, therefore, remain unexhausted.

///

---

[8] The Court notes that, although the state court's written order addressed the IAC claims Emanuel raised in his *pro se* state petition, Nelson's alleged conflict and the lack of testimony by Tannery or Nelson at the evidentiary hearing prevented Emanuel from fully developing such IAC claims.

## 2. Exhaustion is not Excused

"[A] habeas petitioner may be excused from exhausting a given claim where (1) 'there is an absence of available State corrective process,' or (2) 'circumstances exist that render such process ineffective to protect the rights of the applicant'." *Alfaro v. Johnson*, 862 F.3d 1176, 1180 (9th Cir. 2017) (quoting 28 U.S.C. § 2254(b)(1)(B)(i)–(ii)). Under § 2254(b)(1)(B)(ii), "a petitioner may seek redress in federal court "if the [state] corrective process is so clearly deficient as to render futile any effort to obtain relief." *Id.* (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)); *see also Rose v. Lundy*, 455 U.S. 509, 516 n.7 (1982) ("[T]he exhaustion doctrine does not bar relief where the state remedies are inadequate or fail to 'afford a full and fair adjudication of the federal contentions raised' ") (quoting *Ex parte Hawk*, 321 U.S. 114, 118 (1944)).

Considering the totality of the post-conviction proceedings and state habeas appeal, the Court cannot conclude that exhaustion is excused. Although there were patent deficiencies in the post-conviction proceedings, those deficiencies did not render the entire state post-conviction process fundamentally unfair, and thereby excuse exhaustion. Emanuel does not allege any deficiencies in Lay's representation on state habeas appeal or in the appeal itself—the final step for exhaustion. When a claim is presented to a lower state court and then omitted on appeal, federal courts may infer that the petitioner "chose *not* to exhaust [his or] her federal claim in state court for strategic reasons." *Galvan v. Alaska Dep't of Corrections*, 397 F.3d 1198, 1202 (9th Cir. 2005); *Peterson v. Lampert*, 319 F.3d 1153, 1156, 1159 (9th Cir. 2003) (en banc). Here, Emanuel focuses on Nelson's conduct to show that the post-conviction proceedings did not afford a full and fair adjudication of his IAC claims, and thus that argues exhaustion is excused. But Emanuel says nothing of Lay's decision to omit all IAC claims against Tannery and Nelson regarding their performance in the underlying criminal case and raise a single IAC claim on appeal regarding Nelson's conflict of interest in the post-conviction proceedings. Emanuel does not point to any deficiencies in the state appellate process that prevented him from bringing the omitted IAC claims before the Nevada Court of Appeals. If those IAC claims had been raised in Emanuel's appellate brief, they would now be exhausted. In the absence of any contrary evidence or argument, an inference exists that Lay made a strategic decision to omit those IAC claims from the state habeas

14

appeal. For these reasons, Emanuel has not shown that the post-conviction proceedings or state habeas appeal were fundamentally unfair or futile, and exhaustion is not excused.

### 3. Grounds 1, 2.1, and 2.2 are not "Technically Exhausted" and *Martinez* does not Provide Cause and Prejudice to Excuse the Procedural Default

Emanuel argues that, if his IAC claims are unexhausted, the Court should deem the claims technically exhausted but procedurally defaulted, and he can demonstrate cause and prejudice to excuse the default under *Martinez*.

Generally, the ineffectiveness of post-conviction counsel does not qualify as cause to excuse a procedural default. *Coleman*, 501 U.S. at 754–55. However, in *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court created a narrow exception to the general rule that errors of post-conviction counsel cannot provide cause for a procedural default. *Id.* at 16–17. Under *Martinez*, the procedural default of a substantial claim of ineffective assistance of trial counsel is excused, if state law requires that all claims be brought in the initial collateral review proceeding and if in that proceeding there was no counsel or counsel was ineffective. *Id.* at 17. But *Martinez* cannot excuse the procedural default of a substantive claim of trial-court error, ineffective assistance of appellate counsel, or "attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.* at 16–17; *Davila*, 137 S. Ct. at 2064.

In *Coleman*, the petitioner's appellate counsel filed a notice of appeal three days after the statutory deadline expired and the state supreme court dismissed the appeal as untimely. 501 U.S. at 728. Coleman argued that the late filing was the result of ineffective assistance and it was cause to excuse the procedural default. *Id.* at 752–54. The Supreme Court held that Coleman had no constitutional right to counsel on appeal from the trial court's judgment in state habeas proceedings. *Id.* at 767. Thus, "any attorney error that led to the default of Coleman's claims in state court cannot constitute cause to excuse the default in federal habeas." *Id.*

Emanuel's arguments are squarely precluded by *Coleman* and the *Martinez* exception is inapplicable. Nelson's representation in the post-conviction proceedings—ineffective or not—did not prevent Emanuel from bringing his IAC claims in the state habeas appeal. The Nevada

Supreme Court removed Nelson from the state habeas appeal. Lay replaced him and filed Emanuel's appellate brief, which omitted Emanuel's IAC claims against Tannery and Nelson as trial, post-plea, and sentencing counsel and caused the default. Nelson did not deprive Emanuel of the opportunity to raise his IAC claims in the post-conviction proceeding. Rather, Emanuel's IAC claims are unexhausted because they were omitted from his state habeas appeal. *Martinez* cannot supply cause where the claim was defaulted because it was not raised on state habeas appeal. 566 U.S. at 16 (declining to extend exception to *Coleman* to "attorney errors in other kinds of proceedings, including *appeals from initial-review collateral proceedings…*") (emphasis added). Because the default resulted from attorney error in Emanuel's state habeas appeal, *Martinez* cannot excuse the procedural default of Grounds 1, 2.1, and 2.2.

In addition, the Court declines to find Emanuel's claims are technically exhausted. A federal court need not dismiss a claim on exhaustion grounds if it is clear that the state court would find the claim procedurally barred. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *see also Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (en banc) ("An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court."). If he returns to state court, Emanuel faces state-law procedural bars including NRS 34.726(1), which is a one-year statute of limitation, and NRS 34.810, which restricts second or successive petitions. However, both of these procedural bars allow for a showing of cause and prejudice to excuse them, and Nevada's cause and prejudice standards are substantially similar to the federal standards. Given the similarity of the standards, virtually any argument that a petitioner might present in federal court to overcome a procedural default can be presented to the state courts in the first instance. It generally is more appropriate for the state courts to have the opportunity in the first instance to consider the application of conclusive procedural bars. *Cf. Gonzalez v. Wong*, 667 F.3d 965, 980 (9th Cir. 2011) (noting that a stay was appropriate because it provided the state courts with the first opportunity to resolve the claim). The Court will not hold claims to be exhausted on the premise that a petitioner's claims would be procedurally defaulted in state court absent an unequivocal stipulation by the petitioner that the unexhausted claims in fact would be denied on state procedural grounds if he returned to state

court to present the claims. No such stipulation has been made here. Accordingly, the request to find Emanuel's claims technically exhausted is denied.

Because in Grounds 1, 2.1, and 2.2 were not presented to the Nevada Court of Appeals, those claims are not exhausted. Additionally, the Court finds that further factual development is unnecessary and denies Emanuel's motion for evidentiary hearing.

### III. OPTIONS ON AN UNEXHAUSTED PETITION

A federal court cannot grant a state prisoner's habeas petition unless he has fully exhausted available state court remedies for each of the issues presented. 28 U.S.C. § 2254(b),(c). A "mixed" petition—one presenting both exhausted and unexhausted claims—may be dismissed without prejudice or amended to delete unexhausted claims. *Rose*, 455 U.S. at 520. Alternatively, a mixed petition may be held in abeyance pending exhaustion of unexhausted claims. *Rhines v. Weber*, 544 U.S. 269, 277–78 (2005). In general, a federal district court must dismiss an unexhausted petition without prejudice. *Coleman*, 501 U.S. at 731. However, a district court may exercise its discretion "to stay and hold in abeyance fully unexhausted petitions under the circumstances set forth in *Rhines*." *Mena v. Long*, 813 F.3d 907, 912 (9th Cir. 2016).

The Court has determined that all of Emanuel's remaining cognizable claims are unexhausted. Because the amended petition is wholly unexhausted, Emanuel has two options: (1) file a motion to dismiss the amended petition without prejudice in order to return to state court to exhaust the unexhausted claims; or (2) file a motion for other appropriate relief, such as a motion for a stay and abeyance asking this Court to hold his amended petition in abeyance while he returns to state court to exhaust the unexhausted claims.[9] The Court will require Emanuel to make an election with respect to his unexhausted claims within 30 days of this order.

### IV. CONCLUSION

**IT IS THEREFORE ORDERED:**

1. Respondents' Motion to Dismiss (ECF No. 37) is GRANTED:

    a. Grounds 2.3, 3.1, 3.2, and 4 are DISMISSED with prejudice as non-cognizable;

---

[9] Emanuel wanted the option to seek a stay or drop his unexhausted claims, but there are no exhausted, cognizable claims on which he may proceed.

17

  b. Grounds 1, 2.1, and 2.2 are unexhausted;

2. Emanuel's Motion for Evidentiary Hearing (ECF No. 47) is DENIED.

3. Within 30 days of the date of this order, Emanuel must either:

  a. File a motion to dismiss the entire amended petition without prejudice so he may return to state court to exhaust the unexhausted claims (Grounds 1, 2.1, and 2.2); and/or

  b. File a motion for other appropriate relief, such as a motion for a stay and abeyance asking this Court to hold his amended petition in abeyance while he returns to state court to exhaust the unexhausted claims.

4. Failure to timely comply with this order will result in the dismissal of this mixed petition without further advanced notice.

DATED: March 25, 2020

_____
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE