1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

TROY RAY EMANUEL, Jr.,

Petitioner,

v.

DWIGHT NEVEN[1], et al.,

Respondents.

Case No. 2:16-cv-01368-GMN-EJY

# ORDER

10    Petitioner Troy Ray Emanuel, Jr. is a Nevada prisoner who was convicted of Conspiracy

11  to Commit Murder and Robbery With Use of a Deadly Weapon as well as multiple counts of

12  Battery With Use of a Deadly Weapon and Attempt Murder With Use of a Deadly Weapon.

13  Emanuel filed an Amended Petition for Writ of Habeas Corpus (ECF No. 29) under 18 U.S.C. §

14  2254, alleging that his guilty plea is invalid because his counsel rendered ineffective assistance.

15  The Court denies the remaining grounds of Emanuel's Petition, denies him a certificate of

16  appealability, and directs the clerk to enter judgment accordingly.

17    **I.    Background**

18        **a.   Factual Background**

19    On July 2, 2012, Emanuel and his friends, Moore, Pugh, and Freeman, came to Las

20  Vegas, Nevada. ECF No. 10-4 at 3.  On July 4, 2012, a group of friends, including Lanice

21  Brown, her sister Brianna Brown, Brianna's boyfriend Dakwon Bohannon, Mariah Jones,

22  Precious Coleman, Shaquille Richardson, Unique Chavis, and Rashaud Nivens, were walking

23  along the Las Vegas Strip to celebrate the holiday. *Id*.

24    A fist fight between a group of individuals broke out and included Richardson, Nivens,

25  and two of Emanuel's friends. *Id*.  After the fight, the group of friends continued walking down

26
27
28

---

[1] The state corrections department's inmate locator page indicates that Emanuel is incarcerated at
High Desert State Prison.  Jeremy Bean is the current warden for that facility.  At the end of this
Order, the Court directs the clerk to substitute Jeremy Bean as a respondent for Respondent
Dwight Neven. *See* Fed. R. Civ. P. 25(d).

the Strip. *Id*.  Around 3 A.M., at the fountains in front of the Venetian Hotel, Emanuel and his friends caught up to the group of friends. *Id*.  Emanuel pointed a gun at Nivens while Emanuel's friends struck Nivens, searched his pockets, took Nivens's phone and threw it on the ground, and took Nivens's chain off his neck. *Id*.  Emanuel and his friends were searching for a cell phone that they had lost during the fight that broke out. *Id*.

The group of friends, except for Richardson and Chavis, walked to a nearby Siegel Suites. *Id*.  Around 4 A.M., Emanuel and his friends located the group at Siegel Suites. *Id*. Emanuel and his friends chased after Nivens and then returned to the rest of the group. *Id*. Emanuel pointed the gun at Bohannon demanding that they return the cell phone. *Id*.  The group informed Emanuel that they did not have the cell phone. *Id*.  Someone stated, "leave them alone," and Emanuel replied, "no, fuck them," and began shooting at the group. *Id*.

Emanuel repeatedly fired his semi-automatic handgun at the group as they fled down a narrow walkway. *Id*. at 3-4.  Emanuel shot four out of the five people, but no one in the group was fatally wounded. *Id*. at 4.  Emanuel shot Lanice Brown in the ankle, Bohannon in the foot, Coleman in the arm, and Jones in the thigh/hip area as well as in the ankle. *Id*.  Emanuel also shot a parked car hitting the front license plate and front bumper. *Id*.

### b.  Procedural History

Emanuel, along with his three co-defendants, were charged with one count of Conspiracy to Commit Murder, five counts of Attempted Murder With a Use of a Deadly Weapon, four counts of Battery With Use of a Deadly Weapon Resulting in Substantial Bodily Harm, one count of Robbery With Use of a Deadly Weapon, and one count of Discharging a Firearm at or into a Structure, Vehicle, Aircraft, or Watercraft. ECF No. 9-12.

On November 2, 2012, Emanuel filed a *pro se* motion to dismiss his attorney, Richard Tannery ("Tannery"), for lack of communication. ECF No. 11-1.  On April 18, 2013, Emanuel filed another *pro se* motion to dismiss his attorney. ECF No. 9-18.  Emanuel asserted that Tannery did not communicate with him, Tannery did not investigate any defenses or mitigation for sentencing, Tannery did not provide Emanuel copies for documents related to his case, and Tannery did not file any motions. *Id*. at 3.

The State offered Emanuel a plea deal wherein Emanuel would plead guilty to Attempt Murder With Use of a Deadly Weapon and Robbery with an aggregate sentence of 8 to 20 years. ECF No. 9-19 at 3.  At calendar call on May 15, 2013, Emanuel rejected the State's offer on the record. *Id*. at 3-5.  At calendar call, the state district court denied Emanuel's motions to dismiss his counsel. *Id*. at 5.

Five days later, on the first day that trial was set to begin, Emanuel pled guilty to the Conspiracy, Battery, and Robbery counts and entered an *Alford*[2] plea to the Attempt Murder counts. ECF No. 10-2.  Per the guilty plea agreement, the State dismissed the Discharging Firearm at or into a Structure, Vehicle, Aircraft, or Watercraft count, and retained the right to argue at sentencing. *Id*.

Emanuel's co-defendants, Moore, Pugh, and Freeman had also entered guilty pleas. Moore and Pugh entered plea agreements wherein they pled guilty to Conspiracy to Commit Robbery and Battery with Intent to Commit Robbery and stipulated to concurrent sentences of 24 to 60 months for each count. ECF Nos. 30-7, 30-9.  Freeman entered a plea agreement wherein he pled guilty to one count of Possession of a Firearm by an Ex-Felon and one count of Accessory to a Felony with a stipulated sentence of 28 to 72 months concurrent to a sentence of 12 to 36 months. ECF No. 30-10.

Emanuel filed a *pro se* motion to withdraw his plea on the basis that Tannery advised him that he would receive the same sentence as his co-defendants. ECF No. 52-8 at 4.  On the day set for sentencing, Tannery informed the state district court that Emanuel filed a motion to withdraw his plea. ECF No. 10-5 at 3.  The state district court dismissed Tannery as counsel and appointed Roy Nelson ("Nelson") to represent Emanuel. *Id*.

Nelson informed the state district court that Emanuel's motion to withdraw plea was based on ineffective assistance of counsel. ECF No. 10-6 at 3.  Although Nelson noted to the state district court that he explained to Emanuel that he should pursue his claim in a post-conviction proceeding, Nelson nonetheless requested a hearing to cross-examine Tannery on

---

[2] *North Carolina v. Alford*, 400 U.S. 25 (1970).

Emanuel's behalf. *Id*.  Weeks later, however, Nelson informed the state district court that Emanuel opted to proceed to sentencing and withdrew his motion to withdraw his plea and request for evidentiary hearing. ECF No. 52-35 at 3.

On November 1, 2013, the state district court entered the judgment of conviction and sentenced Emanuel to an aggregate term of 14 to 35 years. ECF No. 10-10 at 3-4.  Emanuel did not file a direct appeal.  On February 13, 2014, Emanuel filed a *pro se* state habeas Petition for Writ of Habeas Corpus asserting claims of ineffective assistance of counsel. ECF No. 10-11. The state district court appointed Nelson to represent Emanuel in his post-conviction proceedings. ECF No. 10-18 at 3.

Nelson filed a supplemental Petition and request for an evidentiary hearing. ECF No. 10-20.  Although the state district court granted an evidentiary hearing, Tannery did not appear to testify. ECF No. 11-4 at 3.  Emanuel requested a continuance, but the state district court denied his request. *Id*.  Emanuel's secondary counsel, Spencer Judd ("Judd"), testified at the evidentiary hearing. *Id*.  Following the evidentiary hearing, the state district court denied Emanuel's state habeas Petition. ECF No. 11-9.

On appeal, after failing to comply with deadlines, the Nevada Supreme Court removed Nelson as counsel for Emanuel and remanded to the state district court for the limited purpose of appointing new counsel. ECF No. 11-17 at 2-3.  The state district court appointed Matthew Lay ("Lay") to represent Emanuel.  ECF No. 11-19.  After obtaining new counsel, Emanuel filed an appeal requesting remand for additional factual development on the basis that there was a conflict of interest because Nelson was the subject of two ineffective assistance of counsel claims and that the district court erred by a refusing to continue the evidentiary hearing to allow Tannery to testify.  The Nevada Court of Appeals affirmed the denial of habeas relief on appeal. ECF No. 12-21.

On June 10, 2016, Emanuel initiated this federal habeas proceeding by filing a his *pro se* federal habeas Petition. ECF No. 4.  Following appointment of counsel, Emanuel filed his Amended Petition. ECF No. 29.  The Court granted in part and denied in part Respondents' Motion to Dismiss, dismissing Grounds 2.3, 3.1, 3.2, and 4 with prejudice as non-cognizable and

finding that Grounds 1, 2.1 and 2.2 were unexhausted. ECF No. 53.  The Court granted a certificate of appealability as to whether the failure to exhaust Grounds 1, 2.1 and 2.2 was excused. ECF No. 61.  The Ninth Circuit determined that Emanuel satisfied his obligation to exhaust Grounds 1, 2.1 and 2.2 because Emanuel identified procedural errors on appeal and requested a remand. ECF No. 69.  The Ninth Circuit reversed dismissal of those claims, and remanded. *See* ECF Nos. 69, 70.

## II.   Governing Standards of Review

### a.   Review under the Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (first quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and then citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75.

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### b.  Standard for Evaluating Ineffective Assistance of Counsel Claims

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of ineffective assistance of counsel claims requiring Petitioner to demonstrate that: (1) the counsel's "representation fell below an objective standard of reasonableness[;]" and (2) the counsel's deficient performance prejudices Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  Courts considering an ineffective assistance of counsel claim must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.  It is Petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687.  Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner to "show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.  Rather, errors must be "so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." *Id*. at 687.

Where a state court previously adjudicated the ineffective assistance of counsel claim under *Strickland*, establishing the court's decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05.  In *Richter*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted).  The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

///

///

6

### III.   Discussion

#### a.   Ground 1—Ineffective Assistance of Counsel re: advice regarding plea offers.

In Ground 1, Emanuel alleges that his plea was not voluntary or intelligently made because Tannery rendered ineffective assistance. ECF No. 29 at 29-31.  Emanuel asserts that he initially rejected the plea offer to plead guilty to two counts of Attempted Murder with Use of a Deadly Weapon and Robbery with a stipulated sentence of 8 to 20 years because Tannery advised him that he could negotiate a better deal. ECF No. 97 at 17.  Emanuel later accepted a plea offer because Tannery incorrectly advised Emanuel that he would not be pleading guilty to the Attempted Murder counts and that Emanuel would receive a sentence like those received by his co-defendants. *Id*. at 17-18.

Emanuel, however, pled to 11 out of the 12 counts, including *Alford* pleas as to the Attempted Murder counts, with no negotiated sentence in exchange for the State dismissing the Discharging Firearm into a Structure count. *Id*. at 18.  Emanuel asserts that he has an eighth-grade education as well as learning difficulties, that he did not understand the nuances of the *Alford* plea, and he believed he was not pleading guilty to Attempted Murder. *Id*. at 19.

#### i.   Additional Background Information

##### 1.   Calendar Call

At the calendar call when Emanuel rejected the State's offer, the State proffered that because Emanuel rejected the State's offer that it was revoking that all offers and no other offers would be made. ECF No. 9-19 at 3.  Emanuel affirmed that he spoke to his attorneys. *Id*.  The record provides as follows:

> **THE STATE:** And for the record, they've advised me – both counsel advised me that they recommended that he take the State's offer.
>
> **THE COURT**: Okay.
>
> **THE STATE:**  Just for the record.
>
> **THE COURT**: He doesn't have to.
>
> . . .
>
> **TANNERY**:   Judge, let us just supplement that a little bit. We have visited him extensively and especially over the last two, three weeks. [Judd] and

> I went in last Friday; Spencer went in yesterday.
>
> **JUDD:** Monday.
>
> **TANNERY:** Monday. And I've been to see him at least five to ten times. So any allegations that he hadn't been given these offers is not true.
>
> **THE COURT**: Okay. So after talking to your attorney, you believe it's in your best interest to go to trial.
>
> **EMANUEL**: Yes.

*Id*. at 3-5.

### 2. Plea Canvass

During the plea canvass, the state court set forth the charges to which Emanuel had agreed to plead guilty and Emanuel indicated that he understood the terms of the negotiation:

> **MR. JUDD:** Judge, we have – Mr. Emanuel has agreed to plead guilty to the following   charges. He will be pleading guilty pursuant to *North Carolina v. Alford*, on Counts 2 through 5 of the second Amended Information which are attempt murder with use of a deadly weapon.
>
> He will be pleading guilty to Count 1, conspiracy to commit murder and 7 through 10, battery with use of a deadly weapon resulting in substantial bodily harm. Count 11, robbery with use of a deadly weapon. And the count of discharging a firearm at or into a structure, vehicle, aircraft, or watercraft will be dismissed.
>
> **THE COURT:** Is that your understanding of the negotiation, Mr. Emanuel?
>
> **EMANUEL:**   Yes. Yes, your Honor.

ECF No. 10-3 at 3.  Emanuel affirmed that he accepted the negotiations after discussing the matter with his attorneys. *Id*.

The state district court read the allegations from the Second Amended Information as to each charge, asked Emanuel how he plead, and Emanuel stated that he pled guilty as to each charge. *Id*. at 4-7.  For the Attempt Murder with Use of a Deadly Weapon count, the state court asked, and Emanuel affirmed that he was pleading guilty through the *Alford* decision. *Id*. at 6-7.  Emanuel affirmed that his attorneys discussed the *Alford* plea with him and answered all of his questions. *Id*. at 7.  The state district court had the State set forth what they would prove if the case proceeded to trial. *Id*. at 7-8.  After the State presented what it would have proven at trial, the state court questioned Emanuel regarding his *Alford* pleas as follows:

> **THE COURT:** Now if we'd gone to trial and finished this trial, that's what the state could have presented and the jury could have found you guilty of those things. Is that why you're pleading guilty by way of the *Alford* decision?
>
> **EMANUEL:** Yes, your Honor.

*Id*. at 9.

The state district court reviewed the consequences of his plea with Emanuel. *Id*. at 12-15. The state district court reviewed the minimum and maximum terms as to each charge as well as whether Emanuel would be eligible for parole as to each charge. *Id*. at 12-14. Emanuel affirmed that he understood that the sentencing judge has the discretion to order the sentences served concurrently or consecutively. *Id*. at 14-15. He affirmed that no one had promised or guaranteed any particular sentence to him. *Id*. at 15.

Emanuel affirmed that he signed the guilty plea agreement after consulting with his attorneys and that he wasn't acting under duress or promises of leniency. *Id*. at 17. He affirmed that he read the agreement and that his attorneys answered all of his questions regarding the guilty plea agreement. *Id*.

### 3. Plea Memorandum

The guilty plea memorandum sets forth the charges to which Emanuel pled guilty and the charges to which he pled guilty pursuant to *Alford*. ECF No. 10-2 at 2. The guilty plea memorandum also sets forth the consequences of the plea, such as the minimum and maximum terms as to each charge. *Id*. at 3-5. Emanuel affirmed in the guilty plea agreement that has "not been promised or guaranteed any particular sentence by anyone," and that he knows "that [his] sentence is to be determined by the Court within the limits prescribed by statute." *Id*. at 5.

Emanuel further affirmed that he discussed the elements, consequences, and waiver of rights with his attorneys and that his attorneys answered all of his questions regarding the guilty plea agreement and its consequences. *Id*. at 7. In the guilty plea memorandum, he affirms that he is signing the agreement voluntarily and that he is not acting under any promises of leniency, except those set forth in the agreement. *Id*.

///

#### 4. Postconviction Evidentiary Hearing

At the postconviction evidentiary hearing, Emanuel's secondary counsel, Judd testified that he visited Emanuel and discussed the State's offer to plead guilty to Attempt Murder with Use of a Deadly Weapon and Robbery for a term of 8 to 20 years with him. ECF No. 11-4 at 7. Judd testified that he recommended to Emanuel that he accept the offer. *Id*. at 9. He testified that when they went to calendar call, they were prepared for Emanuel to plead guilty. *Id*. Judd also testified that Tannery visited Emanuel and met with him extensively. *Id*. at 9-11.

Judd testified that on the day that trial was set to begin, he and Tannery discussed pleading guilty with Emanuel to make sure that was what he wanted to do. *Id*. at 11-15. He further testified that Emanuel stated that he thought it was in his best interest to plead guilty. *Id*.

#### ii. Standard for Valid Guilty Plea

Under the *Alford* doctrine a defendant who maintains his innocence may voluntarily plead guilty where he intelligently concludes that his interests require the entry of a guilty plea, and the record contains strong evidence of actual guilt. *Alford*, 400 U.S. at 37. The federal constitutional guarantee of due process requires that a plea be knowing, intelligent, and voluntary. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *Alford*, 400 U.S. at 31).

For a plea to be knowing, intelligent, and voluntary, the defendant must be advised of the direct consequences of the plea. *Brady v. United States*, 397 U.S. 742, 755 (1970). A direct consequence has "a definite, immediate and largely automatic effect on the range of the defendant's punishment[.]" *Torrey v. Estelle*, 842 F.2d 234, 236 (9th Cir. 1988). "Before a court may accept a defendant's guilty plea, the defendant must be advised of the 'range of allowable punishment' that will result from his plea." *Id*. at 235. The validity of a "plea can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749.

#### iii. State Court Determination

The Nevada Court of Appeals held:

Emanuel argues the district court erred by declining to continue the evidentiary hearing regarding his February 13, 2014, postconviction petition so as to permit one of his prior attorneys to testify. "This court reviews the district court's decision regarding a motion for continuance for an abuse of discretion." *Rose v. State*, 123 Nev. 194, 206, 163 P.3d 408, 416 (2007). "[W]hen a [petitioner] fails to demonstrate that he was prejudiced by the denial of a continuance, the district court's decision denying a continuance is not an abuse of discretion." *Id.*

The record reveals that one of Emanuel's pre-guilty-plea attorneys testified at the evidentiary hearing and the parties informed the district court the other attorney was out of state. Emanuel requested a continuance to permit the other attorney to testify at the evidentiary hearing. The district court decided to conduct the hearing that day, and following the evidentiary hearing, concluded Emanuel's claims lacked merit. On appeal, Emanuel merely speculates his other counsel could have provided additional information, and accordingly, fails to meet his burden to demonstrate he was prejudiced by the denial of the continuance request. Therefore, Emanuel is not entitled to relief for this claim.

ECF No. 12-21 at 2-5.

Emanuel argues that the Nevada Court of Appeals' decision is the controlling decision because it addressed the merits of the claims by denying Emanuel's requests to reverse the lower court's procedural decisions that prevented factual development. ECF No. 97 at 11-12.  He argues that the Nevada Court of Appeal's decision was an unreasonable determination of the facts and that the Court should nonetheless review Ground 1 *de novo*. *Id*. at 13.

Respondents argue that because the Nevada Court of Appeals did not address the claim in its order denying relief, the Court should "'look through' the unexplained decision to the last related state-court decision that does provide relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 122 (2018). Respondents assert that the Court should apply the look-through doctrine and presume that the Nevada Court of Appeals approved of and followed the state district court's factual findings and conclusions as the last reasoned state court decision.  Emanuel argues that even if the Court were to "look through" to the state district court's decision, he asserts that the state district court's decision was also based on an unreasonable determination of facts and the Court should review the claim *de novo*. ECF No. 97 at 14.

The state district court discussed the *Strickland* two-prong test for analysis of ineffective assistance of counsel claims and held:

[Emanuel's] first ground does not warrant relief because it is belied by the record.

[Emanuel] claims in his petition that his trial counsel was ineffective for failure to secure for him a better plea deal, asserting that he was promised a better deal than the eight (8) to twenty (20) years offer which he refused on May 15, 2013. However, the record reveals that [Emanuel] was in fact advised by counsel to take that deal, and that he refused to do so. The record reflects that both counsel advised [Emanuel] to take the offer, and upon inquiry by the Court, [Emanuel] stated that it was his belief that it was in his best interest to go to trial. The Court also finds that the plea canvass was thorough. During that canvass, [Emanuel] denied being offered any promises other than those contained in the GPA. Because [Emanuel's] claim is belied by the record, it cannot afford him relief. *Hargrove*, 100 Nev. at 502. Moreover, [Emanuel's] counsel could not force the State to provide a better offer than that he rejected, and his counsel cannot be faulted for failing to do the impossible. *United States v. Cronic*, 466 U.S. 648, 656 n.16 (1984).

[Emanuel's] third fully formed claim, made in his Supplement filed October 10, 2014, alleges that [Emanuel's] counsel was ineffective because they misinformed him of the terms of the plea. This claim is belied by the record, and thus is meritless. Based upon the record, and the testimony at the Evidentiary Hearing, the Court finds that [Emanuel] was accurately informed of the terms of the plea. Moreover, [Emanuel] was specifically informed of the terms of the plea prior to acceptance of his plea. Upon looking at the totality of the record, the facts and circumstances of his plea, the Court finds that [Emanuel] was fully informed to the plea, and its consequences, and he chose to reject it. *State v. Froese*, 116 Nev. 1097, 1106 (2000) (noting that a defendant can always allege some portion of his GPA, and a thorough canvass and GPA can quickly dispose of such allegations). [Emanuel] is not entitled to relief upon this ground.

ECF No. 11-9 at 4-7.

### iv.  Conclusion

The subject of federal review is "the last reasoned state-court decision." *Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014).  The Ninth Circuit determined that Emanuel exhausted this claim because he had "appeal[ed] procedural rulings and request[ed] to return to the state habeas court to present his claims under proper procedures." ECF No. 69 at 8.  Because the Nevada Court of Appeals' opinion "does not come accompanied with [the] reasons" why it denied the claim, the Court "'looks through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson*, 584 U.S. at 126.  This Court "then presume[s] that the unexplained decision adopted the same reasoning." *Id*.

The state district court's rejection of Ground 1 was neither contrary to nor unreasonable application of clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of facts.

Emanuel asserts that his counsel was ineffective because he advised him to reject the State's offer with a stipulated sentence of 8 to 20 years when counsel could negotiate a better

deal.  As stated by the state district court, the allegations are belied by the record.  At calendar call with Emanuel present, the State provided to the state district court that Emanuel's attorneys advised him to accept the offer and Tannery provided that he visited Emanuel multiple times.  ECF No. 9-19 at 4.  Emanuel affirmed to the state district court that he believed it was in his best interest to go to trial after speaking with his attorney. *Id*. at 4-5.  At the postconviction evidentiary hearing, Judd testified that he recommended to Emanuel that he accept the offer and that when they went to calendar call, they were prepared for Emanuel to plead guilty. ECF No. 11-4 at 9-11.

In addition, the state district court explained to Emanuel the rights that he would give up by entering the plea agreement.  The state district court described the terms of the plea agreement, including the minimum and maximum terms as to each charge.  At the plea canvass, Emanuel affirmed that he accepted the negotiation after discussing the matter with his attorneys.  While noting that Emanuel's representations at the time of his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his plea, the Supreme Court stated that, nonetheless, a defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63 (1977).

Moreover, Emanuel acknowledged that he read and understood the terms of the agreement that he signed, which included an affirmation that he has "not been promised or guaranteed any particular sentence by anyone," and that he knows "that [his] sentence is to be determined by the Court within the limits prescribed by statute." ECF No. 10-2 at 5.  Nothing in the record demonstrates that Emanuel was not competent or not properly informed about the plea before entering it.  Emanuel fails to show that his counsel's performance was objectively unreasonable.

Even on *de novo* review, in the alternative, the Court would nonetheless find that Emanuel does not show a reasonable probability that, but for any alleged deficiency in his counsel's performance, he would not have pled guilty and would have insisted on going to trial.

*See Hill*, 474 U.S. at 59; *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice").  In exchange for the guilty plea, the State agreed to drop the Discharging a Firearm at or into a Structure, Vehicle, Aircraft, or Watercraft count.  Had Emanuel rejected the plea agreement and proceeded to trial, he would have faced an additional charge, would have been at risk of being found guilty of Attempt Murder with use of a Deadly Weapon, as opposed to the *Alford* plea he entered for such counts, and would not have gained the benefit of reduced exposure at sentencing.  Emanuel is, therefore, denied federal habeas relief on Ground 1.

**b.   Ground 2.1—Ineffective Assistance of Counsel re: Advice regarding Motion to Withdraw Guilty Plea**

The state district court appointed Nelson to advise Emanuel regarding his request to withdraw his plea before sentencing based on Emanuel's allegations that Tannery misrepresented the terms of the plea deal. ECF No. 29 at 32.  Nelson informed the state district court that Emanuel's allegations were more related to ineffective assistance of counsel claims. *Id*. Emanuel asserts that Nelson rendered ineffective assistance because Nelson advised him to wait until postconviction to pursue his claim, which prejudiced him because it subjected him to a higher standard of proof to obtain plea withdrawal. *Id*.

**i.   Additional Background Information**

During a status check before the state district court, Nelson requested a hearing to question Tannery based on Emanuel's request as follows:

> I've reviewed the Guilty Plea Agreement as well as I know how this Court canvasses people who are entering into pleas. I've also reviewed his motion to withdraw plea. It appears that he's attempting to withdraw his plea more on a situation of ineffective assistance of counsel versus some type of coercion by Mr. Tannery.
>
> I've explained to him that I think the more appropriate avenue for him to take is through postconviction. That being said, he wants me to ask you for a hearing so that we can essentially cross examine Mr. Tannery as to what he may have promised him regarding his sentencing.

ECF No. 10-6 at 3.

Weeks later at another status check, Nelson informed the state district court that Emanuel

was withdrawing his request to conduct an evidentiary hearing and was no longer trying to

withdraw his plea. ECF No. 52-35 at 3.  At the sentencing hearing, Nelson provided as follows:

> Judge, I'm sure you're aware I did not represent him at the time that he entered his
> plea. That was Mr. Tannery. I was only appointed afterwards to make a
> determination whether or not he had any grounds to withdraw his plea.
>
> Prior to us making that decision, I provided him with the State's sentencing
> memorandum. He got a chance to see what they were going to ask for and he still
> followed through and went through with his plea.

ECF No. 10-7 at 8.

## ii.  State Court Determination

Because the Nevada Court of Appeals' opinion "does not come accompanied with [the]

reasons" why it denied the claim asserted in Ground 2.1, the Court "'looks through' the

unexplained decision to the last related state-court decision that does provide a relevant

rationale." *Wilson*, 584 U.S. at 126.  This Court "then presume[s] that the unexplained decision

adopted the same reasoning." *Id*.

In its order denying postconviction relief, the state district court held:

> [Emanuel's] second ground is equally unavailing. [Emanuel] claims that counsel
> was ineffective for failure to file a motion to withdraw his guilty plea, and then for
> failing to file a notice of appeal on a denial of that motion. The record reveals,
> however, that Nelson, who was appointed to represent [Emanuel] regarding his
> claim that he was coerced into taking the plea, spoke with [Emanuel], and they
> decided that [Emanuel's] contention was in actuality a claim of ineffective
> assistance of counsel. [Emanuel] and Nelson determined correctly that such claim
> was properly raised in a post-conviction proceeding, rather than direct appeal.
> *Evans v. State*, 117 Nev. 609, 621-22 (2001). Further, prior to sentencing [Emanuel]
> expressed to Nelson his desire to proceed with the agreement, upon seeing the
> State's requested sentence. [Emanuel] was aware of his ability to pursue the motion,
> and affirmatively chose against doing so. Counsel cannot now be deemed
> ineffective for failing to file that motion, following [Emanuel's] direction. *See*
> *Ennis v. State*, 122 Nev. 694, 706 (2006).

ECF No. 11-9 at 4-6.

## iii.  Conclusion

The Court finds that the state district court's rejection of Ground 2.1 was neither contrary

to nor an unreasonable application of clearly established law as determined by the United States

Supreme Court and was not based on an unreasonable determination of facts.  The state district

court reasonably determined that Emanuel failed to show that Nelson was deficient.  An

attorney's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 691. *See Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) ("[E]ven if there is reason to think that counsel's conduct 'was far from exemplary,' a court still may not grant relief if '[t]he record does not reveal' that counsel took an approach that no competent lawyer would have chosen.")

Further, as stated by the state district court, the record demonstrates that Emanuel expressed to Nelson his desire to proceed with the guilty plea agreement after seeing the State's sentencing memorandum. Nelson had initially notified the state district court that Emanuel requested an evidentiary hearing to cross-examine Tannery. Emanuel, however, chose to proceed with the guilty plea agreement. The Court, therefore, finds that the state court reasonably determined that Emanuel failed to show that his counsel was deficient.

The Court, nonetheless, in the alternative, would deny relief on *de novo* review. Counsel cannot be deemed ineffective for failing to raise a meritless motion. *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994). A Nevada defendant may withdraw his guilty plea for any "fair and just" reasons. *See* NRS § 176.165; *Crawford v. State*, 117 Nev. 718 (2001); *see also Stevenson v. State*, 131 Nev. 598 (2015) ("The district court must consider the totality of the circumstances to determine whether permitting withdrawal of a guilty plea before sentencing would be fair and just.").[3] Courts should not focus exclusively on whether a defendant knowingly, voluntarily, and intelligently entered a guilty plea. *Stevenson*, 131 Nev. at 603. Withdrawal of a guilty plea is more commonly permissible where the record shows a defendant was not informed of the consequences of the plea, such as where, before the entry of the plea, a defendant was not informed probation is not available, *Skinner v. State*, 113 Nev. 49, 51 (1997), or was not informed the sentencing court could consider allegations in connection with dismissed counts at sentencing, *Jezierski v. State*, 107 Nev. 355, 355-56 (1991).

Given the extensive plea canvass and Emanuel's affirmations that he read the plea

---

[3] The Court notes that after Nelson's alleged failure to file a Motion to Withdraw Plea and after the state district court's decision denying Emanuel's postconviction state Petition, the Nevada Supreme Court issued *Stevenson*, clarifying standards for determining whether a defendant is entitled to withdraw his guilty plea.

agreement before signing it, there is not a reasonable probability that the state district court would have allowed Emanuel to withdraw his plea based on Emanuel's allegations that Tannery misrepresented the terms of the plea. Emanuel fails to demonstrate any likelihood that a motion to withdraw his plea would have succeeded, and as such failed to demonstrate any prejudice resulting from his lawyer's failure to file a motion to withdraw plea. Emanuel is, therefore, denied federal habeas relief on Ground 2.1.

### c. Ground 2.2—Ineffective Assistance of Counsel re: Failure to File Direct Appeal

In Ground 2.2, Emanuel alleges Nelson rendered ineffective assistance for failing to file a direct appeal despite Emanuel's requests. ECF No. 29 at 33-34. Emanuel asserts that he repeatedly asked Nelson to file a notice of appeal, but Nelson never did. *Id*. at 33.

Nelson represented Emanuel in his postconviction proceedings, and Nelson dropped all of Emanuel's ineffective assistance of counsel claims regarding Nelson. *Id*. at 34. Because Nelson missed deadlines for Emanuel's postconviction appeal, the Nevada Supreme Court conditionally sanctioned Nelson, referred the matter to the state bar for investigation after Nelson failed to file briefing on appeal, removed Nelson as counsel, and appointed new counsel to represent Emanuel. ECF Nos. 11-16, 11-17, and 11-18.

Emanuel further alleges that Nelson had an affirmative duty to consult Emanuel on his right to appeal and determine if he wanted to appeal, but Nelson did neither. ECF No. 97 at 27. He asserts that he could have raised a cruel and unusual punishment claim as to the lengthiness of his sentence and disparity between his sentence and his co-defendants, or he could have raised a claim of judicial bias on appeal. *Id*. But for Nelson's deficient performance, Emanuel alleges that he would have pursued his right to a direct appeal. *Id*. at 28.

Respondents assert that Nelson stated in open court that Emanuel never asked him to file a direct appeal on his behalf. *See* ECF No. 10-18 at 3. They further argue that Nelson could not appeal Emanuel's contemplated motion to withdraw plea because Emanuel opted not to file a motion to withdraw plea. ECF No. 86 at 34. As such, Respondents argue that Nelson did not have anything to advise Emanuel regarding appeal. *Id*.

### i. Standard for Ineffective Assistance Claims Regarding Filing an Appeal

The *Strickland* "test applies to claims … that counsel was constitutionally ineffective for failing to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).  To establish deficient performance under *Flores-Ortega*, a petitioner must make one of the following showings: (i) that counsel "fail[ed] to follow the defendant's express instructions with respect to an appeal"; (ii) that "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)" and counsel did not consult with the defendant about appealing; or (iii) that the defendant "reasonably demonstrated to counsel that he was interested in appealing" and counsel did not consult with the defendant. *Id*. at 478, 480. "Consult," in this context, "means advising the defendant about the advantages and disadvantages or taking an appeal and making reasonable effort to discover the defendant's wishes." *Id*. at 471.

To show prejudice, the petitioner "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*. at 484. "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Id*. at 485.

### ii. State Court Determination

Because the Nevada Court of Appeals' opinion "does not come accompanied with [the] reasons" why it denied the claim asserted in Ground 2.1, the Court "'looks through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson*, 584 U.S. at 126.  This Court "then presume[s] that the unexplained decision adopted the same reasoning." *Id*.

In its order denying postconviction relief, the state district court held:

[Emanuel's] contention that counsel was ineffective for failing to file a notice of appeal from the denial of a motion to withdraw guilty plea is also fruitless. [Emanuel] chose not to file such a motion. Thus, it was never considered not denied. The Nevada Supreme Court will not consider issues raised in the first instance on appeal. *See Bejarano v. State*, 122 Nev. 1066, 1071 (2006); *McNelton v. State*, 115 Nev. 396, 416 (1998); *Hill v. State*, 114 Nev. 169, 178 (1998); *Davis v. State*, 107 nev. 600, 606 (1991), *overruled on other grounds by Means v. State*, 120 Nev. 1001 (2004). Thus, [Emanuel] cannot show that filing such an appeal would not be subject to summary dismissal, but would rather have a reasonably probability of

success. *Foster v. State*, 121 Nev. 165, 170 (2005) (holding that a habeas petitioner must show that the omitted ground of appeal would have had a reasonable probability of success). Counsel is not ineffective for failing to make a futile argument. *Ennis*, 122 Nev. at 706.

ECF No. 11-9 at 4-7.

### iii. *De Novo* Review

The state district court's decision is based on an unreasonable determination of the facts. As determined by the Ninth Circuit, Emanuel exhausted his claim in Ground 2.2 that "Nelson provided ineffective assistance by failing to appeal Emanuel's conviction." ECF No. 69 at 3. The state district court, however, reviewed whether Nelson rendered ineffective assistance for failing to appeal the denial of a motion to withdraw guilty plea.  Because the state district court's decision was based on an unreasonable determination of the facts, the Court reviews this claim *de novo*.

### iv. Whether the Court may consider evidence that was not submitted to the state appellate court.

Respondents rely on *Shinn v. Ramirez*, 596 U.S. 366 (2022) and argue that the Court should not consider evidence that Emanuel failed to properly develop in state court. ECF No. 86 at 35-37.  They assert that Emanuel relies on various exhibits, such as various *pro se* filings Emanuel submitted to the state district court referencing his attempts to file a direct appeal, specifically for Emanuel's claim asserted in Ground 2.2.[4] *See* ECF No. 9-10 at 42-158. Respondents argue that because Emanuel did not file such exhibits before the Nevada appellate courts, the Court should disregard such evidence.

Generally, the merits of the claims in a federal habeas corpus petition are decided on the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).  Federal courts have a duty to conduct an independent review of the record, *Nasby v. McDaniels*, 853 F.3d 1049, 1052 (9th Cir. 2017) (citation omitted), and its review under AEDPA is not limited to the record actually before the Nevada appellate courts but instead extends to all material in the state court record. *McDaniels v. Kirkland*, 813 F.3d 770, 773 (9th Cir. 2015) (en banc) (holding federal habeas courts "may consider the entire state-court record, including evidence that was presented

---

[4] The Court notes that one of Emanuel's *pro se* state habeas Petitions was nonetheless filed before the Supreme Court of Nevada. *See* ECF No. 100-1 at 58-72.

only to the trial court.") The Court therefore refers to Emanuel's *pro se* filings in adjudicating the remainder of the claim.

### v.  Conclusion

Emanuel alleges that he repeatedly asked Nelson to file a notice of appeal.  Nelson informed the state district court on April 21, 2014, that he spoke to Emanuel and his grandmother, and that Emanuel "did not ask [Nelson] to file a direct appeal." ECF No. 10-18 at 3.  If the Court assumes that Emanuel did not definitively instruct counsel to file an appeal, the analysis turns on whether counsel consulted or was required to consult with Emanuel about an appeal.  There is no evidence in the record that such a consultation took place.  If Nelson did not consult, the Court must assess the reasonableness of the failure to consult using the following test: "[Counsel must consult] when there is a reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480.

In making this determination, the Court must consider all the information Nelson knew or should have known. *Id*.  A "highly relevant factor," though not a dispositive one, for determining whether a rational defendant would want to appeal is whether that defendant pleaded guilty. *Id*. In such circumstances, the Court must also consider factors such as whether the plea was entered pursuant to a plea agreement, whether the defendant was sentenced in accord with the plea agreement, and whether the plea agreement waived or reserved appellate rights. *Id*.

Here, Emanuel pleaded guilty, received the benefits of pleading guilty, received the sentence agreed upon in the plea agreement, and waived all appellate rights other than challenging his conviction through other postconviction remedies including a habeas corpus petition. ECF No. 10-2 at 6.  However, on October 31, 2013, before his window for filing a notice of appeal had closed, Emanuel filed a *pro se* motion requesting that the state district court vacate judgment and requesting a new trial. ECF No. 52-9.  In the *pro se* motion, he asserts that he did not pursue his motion to withdraw guilty plea based on his attorney's advice that Emanuel would receive the same sentence as his co-defendants. *Id*. at 5-6.  Emanuel references that

counsel told him that if he pled guilty, the state district court judge promised to sentence him to the same sentence that his co-defendants received. *Id*. at 4.  The *pro se* motion was sent to Nelson and sufficiently demonstrates Emanuel's interest in an appeal, triggering his counsel's duty to consult with him.  Nelson's failure to consult in this situation constitutes deficient performance.

The Court finds that there is a reasonable probability that, but for counsel's deficient failure to consult with Emanuel about an appeal, he would have timely appealed.  On February 13, 2014, although outside of the window for filing a notice of appeal, in his *pro se* state habeas petition, Emanuel asserts that he tried to file a direct appeal, but he never received a response, or it was never filed. ECF Nos. 10-11 at 3-5; 100-1 at 59-61.  In addition, Emanuel asserts that he could have raised nonfrivolous grounds on appeal, such as a cruel and unusual punishment claim as to the lengthiness of his sentence and disparity between his sentence and his co-defendants, or he could have raised a claim of judicial bias on appeal. ECF No. 97 at 27. *See Flores-Ortega*, 528 U.S. at 472 (a showing of nonfrivolous grounds for appeal may give weight to the defendant's contention that he would have appealed.)  Given that Emanuel filed a *pro se* motion requesting that the Court vacate the judgment before his 30-day deadline expired, asserts that he filed a notice of direct appeal, and that he demonstrates nonfrivolous grounds for appeal, Emanuel demonstrates a reasonable probability that he would have filed a timely appeal had his counsel not failed to consult with him.  Emanuel is granted relief on Ground 2.2.

## IV.     Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA").  Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).  Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right."  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v.*

*Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, this Court finds that, to the extent necessary, a certificate of appealability is unwarranted for Grounds 1 and 2.1.

**V.      Conclusion[5]**

It is therefore ordered that the Petitioner Troy Ray Emanuel, Jr.'s Amended Petition for Writ of Habeas Corpus under 18 U.S.C. § 2254 (ECF No. 29) is denied, in part, as to Grounds 1 and 2.1 and conditionally granted as to Ground 2.2.  Within 60 days[6] of the later of (1) the conclusion of any proceedings seeking appellate or certiorari review of this Court's Judgment, if affirmed, or (2) the expiration of seeking such appeal or review, Emanuel will be released from any and all custody, restraint, and/or continuing consequences from the conviction **unless** Emanuel's rights to perfect a direct appeal have been reinstated.

It is further ordered that, to the extent necessary, a certificate of appealability is denied for Grounds 1 and 2.1.

It is further ordered that the Clerk of the Court is directed to (1) substitute Jeremy Bean for Respondent Dwight Neven, (2) enter judgment accordingly conditionally granting the Amended Petition for Writ of Habeas Corpus (ECF No. 29) as provided herein, (3) provide a copy of this order and judgment to the Clerk of the Eighth Judicial District Court for the State of Nevada in connection with that court's case number C283277-1, and (4) close this case.

DATED:  July 1, 2024

_____
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE

---

[5] Emanuel requests that this Court conduct an evidentiary hearing (ECF No. 97 at 31-32). This Court declines to do so because it is able to decide the petition on the pleadings.
[6] Reasonable requests for modification of this time may be made by either party.